**SHIELDS et al. v. LITTLE.**

No. 3632.

Court of Civil Appeals of Texas. Amarillo.
June 17, 1931.

Rehearing Denied July 11, 1931.

Luther Gribble and Jas. C. Mahan, both of Wellington, for appellants.

R. H. Templeton, of Wellington, for appellee.

RANDOLPH, J.

This suit was instituted by M. Little, as plaintiff against Frank Shields, J. M. Shields, and Grace Shields, as defendants. From a judgment in favor of the plaintiff and against the said defendants, the defendants J. M. Shields and Myrtle Shields have appealed; Myrtle Shields having intervened in the suit.

The plaintiff's original petition alleged substantially: That on or about October 1, 1926, J. M. Shields and wife, Myrtle Shields, conveyed to Frank Shields lots Nos. 1, 2, 3, and 4 in block No. 89 in Wellington, Collingsworth county, Tex., by their general warranty deed in writing of that date, in consideration of which, among other things, Frank Shields executed and delivered to J. M. Shields two vendor's lien notes, each dated October 1, 1926, one for $2,500, due October 1, 1927, the other for $975, due October 1, 1928, each payable to J. M. Shields or order, and bearing interest at the rate of 10 per cent. per annum from date until paid, and providing for

attorneys' fees. That on the 30th of July, 1928, J. M. Shields, payee in said notes, sold and transferred same to M. Little, plaintiff herein, and indorsed said notes in writing, whereby the said J. M. Shields became bound to pay same. That, in addition to delivering said notes and indorsing them as aforesaid, said J. M. Shields executed his written transfer of said notes whereby said J. M. Shields assigned the vendor's lien securing same, together with all rights and interest in and to said lots which he owned by virtue of being the payee in said notes and the grantor in said deed, to said M. Little, who is now the owner and holder of said notes and lien, for a valuable consideration paid to J. M. Shields.

That thereafter said Frank Shields was unable to pay said notes according to their tenor and effect. That plaintiff, at the special instance and request of defendants J. M. Shields and Frank Shields, took up and extended the time of payment of said notes, and Frank Shields and wife, Grace Shields, thereupon executed a deed of trust on the property described, on July 15, 1928, and said deed of trust was executed and delivered by Frank Shields and wife to R. H. Templeton, as trustee for plaintiff, and said indebtedness was extended by J. M. Shields and Frank Shields and Grace Shields executing and delivering to the plaintiff their one certain promissory note dated July 15, 1928, payable to plaintiff for $3,500, due in five years, with interest at 10 per cent. from date until paid, to be paid semiannually, and failure to pay the interest as it accrued to mature said note; also providing for attorneys' fees whereby the three defendants became liable and bound to pay, and promised to pay, the plaintiff the sums of money named in said note.

That said deed of trust, among other things, provides as follows: That the above loan is made for the purpose of renewing and extending the following indebtedness, here describing the two vendor's lien notes as above set out, one being for the sum of $2,500 and the other for $975, and also one note for the sum of $597.31, executed by Frank Shields and wife, Grace Shields, and payable to the Panhandle Construction Company, and on which note two installments of $99.65 and interest have been paid. That the note for $597.31 was a first and prior lien on the above-described property, as same was a statutory lien for paving, and it was necessary to take up and extend the same, and, by reason thereof and the said deed of trust lien and paving lien securing the same, he is subrogated to all the right, title, and liens in favor of the Panhandle Construction Company and all the right, title, and vendor's lien in favor of J. M. Shields, as payee in said vendor's lien notes, and is now the legal and equitable owner and holder of said notes

and liens and entitled to the foreclosure of same. Plaintiff further alleges that said vendor's lien notes are past due and unpaid, both principal and interest, and that the promissory note for $3,500 and interest, payable semiannually, has been declared due by the plaintiff because of the failure to pay the interest on same. Plaintiff also claims attorney's fees under proper allegation.

Defendant J. M. Shields filed his answer, consisting of a general denial, and specially pleading that the property in controversy was and is his family homestead; also pleading the facts of the transaction between himself and Frank Shields and plaintiff practically as pleaded by the plaintiff, and further pleading want of consideration as between himself and Frank Shields. Defendant J. M. Shields further pleads the maturity of the note for $2,500, executed by Frank Shields at the time plaintiff purchased same from J. M. Shields, and that plaintiff thereby became charged with notice of the fact that the property in controversy was the homestead of defendant J. M. Shields and his wife, Myrtle Shields.

Mrs. Myrtle Shields, wife of J. M. Shields, joined pro forma by her husband, intervened in the suit, and pleaded that the property in controversy was, at the time of the purchase of the notes and liens against it by the plaintiff, the homestead of herself and husband, and also pleaded that the deed from J. M. Shields and herself to Frank Shields was null and void, and also seeking the cancellation of the deed of trust securing the debt to plaintiff.

Intervener, Mrs. Shields, also attacks the pavement lien for reasons later discussed, and pleads that the debt which said lien secured was void, and that, when plaintiff paid same, he was only a volunteer, and is not entitled to recover the money paid by him in taking up said paving lien.

The defendants Frank Shields and his wife filed no answer and made no appearance.

On trial before the court without the intervention of a jury, judgment was rendered for the plaintiff as prayed for in the sum of $4,757.50, and interest from date of judgment, with foreclosure on the property in controversy. From this judgment defendant J. M. Shields and wife, Myrtle Shields, have appealed.

Appellants assign as error that the court erred in rendering judgment against them because the evidence discloses that J. M. Shields and Myrtle Shields, with full knowledge of their rights to the property in controversy as their homestead, and for the purpose of securing a lien on their homestead, executed and delivered to their son, Frank Shields, a warranty deed to the property in controversy, reciting a consideration of $2,500 cash and the two notes above described, one for $2,500 and the other for $975, each payable to the order of J. M. Shields.

The first note, as stated above, became due and payable October 1, 1927, and was unpaid at the time same was transferred by J. M. Shields to the plaintiff in the transaction stated above between J. M. Shields and Frank Shields and the plaintiff. The defendants J. M. Shields and Myrtle Shields contend that, under the facts of the transaction, the trial court erred in concluding as a matter of law that the plaintiff was an innocent bona fide holder of said notes and liens for value, because, as a matter of law, when a note is acquired after maturity, the purchaser is charged with notice of any defense the original maker thereof has to such note, and stands in no better position than the original holder of same; that, as the $2,500 note was due at the time it was extended and purchased by the plaintiff, this fact charged the plaintiff with the duty of investigating the conditions surrounding the transaction between J. M. Shields and wife and Frank Shields; and that a proper inquiry would have led to the knowledge that the transaction between those parties was a simulated transaction executed for the purpose of borrowing money upon the homestead of J. M. Shields and Myrtle Shields.

There is no question but what J. M. Shields and his wife concocted a deliberate scheme to use this simulated transaction to make a loan upon their homestead, knowing fully the effect of their action. This was in part bolstered up when the deed was executed by having Frank Shields and his wife move into the house with them for a short time. The facts in evidence disclose no equities in favor of the Shields; but their claim to the property in controversy is based solely upon the charge that the plaintiff bought the two vendor's lien notes with the knowledge that the first one was past due; that this gave him notice that would require investigation and would thereby defeat a recovery of a judgment of foreclosure on the home.

The fact that J. M. Shields and his wife were living on the property furnishes no constructive notice, for by their deed to Frank Shields they had placed on record the divestiture of that title, and thus deprived themselves of the evidence of ownership upon which to base their claim of homestead.

We recognize the rule to be that a purchaser who acquires a note after maturity, or who acquires a series of notes subsequent to the maturity of the first of the series, is not an innocent purchaser or bona fide holder of said note. Huselby v. Allison (Tex. Civ. App.) 25 S.W.(2d) 1108, 1112; Harrington v. Claflin, 91 Tex. 294, 42 S. W. 1055.

The appellants invoked this rule, and we must sustain their contention as to that part of the judgment which was rendered for the plaintiff for the sum of the two vendor's lien notes. It was held, it is true, in the case of Eylar v. Eylar, 60 Tex. 315, that a pur-

chaser from a vendee whose vendor remains in possession is not bound to inquire as to the title, when he finds on record in the county deed records a deed from such vendor conveying title, properly proved up and registered, and this rule has been consistently followed by the decisions of this state, but the question of possession is not here being considered as constructive notice. The constructive notice invoked is the purchase of one of the vendor's lien notes after maturity, which is an entirely different proposition.

It having been conclusively shown that the plaintiff's purchase of the two vendor's lien notes was consummated at a time when the first note was matured, it was such constructive notice as would lead him as an ordinarily prudent man to make inquiry as to the status of the property and the conditions of the holding and title.

The note and paving lien given by Frank Shields and his wife were executed prior to the maturity of either of the vendor's lien notes executed by Frank Shields and while he held the record title to the lots in controversy. Hence, when the plaintiff took over the paving debt, he took a valid transfer of said note and lien, and the judgment of the trial court in favor of the plaintiff was correct as to that sum; that is, the amount due on the paving lien was correct.

It is claimed by the appellants that the paving lien, first, was not executed by the owners of the lots; and second, was a voluntary payment by the plaintiff, for which he cannot recover.

We cannot affirm these contentions. The paving contractor took his lien from Frank Shields and his wife, without notice of any claim of homestead, and while the title to the property was still in the name of Frank Shields, duly recorded in the county deed records. He was the apparent owner, and signed and acknowledged with his wife a homestead paving lien, and the paving company was fully justified in accepting said lien as security for the work done by them for the ostensible owners of the homestead.

The purchase by the plaintiff of the pavement lien was not a voluntary purchase. At the time he purchased same, his lien existed on the homestead and had not been determined adversely to him by a court of competent jurisdiction. It was yet to be tried out. Hence he was warranted in purchasing said paving note to protect his other lien.

We therefore reverse and render that portion of the trial court's judgment granting the plaintiff a foreclosure upon the property in question, and render same that the plaintiff be and is refused a foreclosure upon said lots by reason of the judgment upon the two vendor's lien notes given by Frank Shields to J.

M. Shields; but affirm the judgment as a personal judgment against J. M. Shields and Frank Shields for the sum of said two vendor's lien notes and for the amount of the paving note and lien, together with the foreclosure of said paving lien as against all the defendants here involved, upon the property in controversy.